# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL - 3 2008

Clerk, U.S. District and
Bankruptcy Courts

|  |  |
|---|---|
| ANITA BROWN,<br>101 57th Place S.E. #A<br>Washington D.C. 20019<br><br>on her own behalf and as next<br>friend to minor children B.B. and T.B.<br><br>Plaintiff,<br><br>v.<br><br>THE COMMUNITY PARTNERSHIP FOR THE<br>PREVENTION OF HOMELESSNESS<br>801 Pennsylvania Ave., S.E., Suite 360<br>Washington, D.C. 20003,<br><br>Serve:  Marlene L. Johnson, Esq.<br>           1617 Tuckerman Street, N.W.<br>           Washington, D.C. 20011<br><br>and<br><br>FAMILIES FORWARD, INC.<br>1012 14th Street, N.W.<br>Washington, D.C. 20005<br><br>Defendants.<br><br>Serve:  Ruby King-Gregory<br>           1012 14th St., N.W.<br>           Suite 105<br>           Washington, D.C.  20005 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____

Case: 1:08-cv-01166
Assigned To : Huvelle, Ellen S.
Assign. Date : 7/3/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

## COMPLAINT

**RECEIVED**

JUN 2 7 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1

## INTRODUCTION

1.   Plaintiff Anita Brown, a resident of the District of Columbia with a mobility impairment, brings this action on her own behalf and on behalf of her minor sons, B.B. and T.B., seeking declaratory and injunctive relief, compensatory damages, and punitive damages for the Defendants' violation of Titles II and III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, 42 U.S.C. § 12181 *et seq.*; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a); and the Fair Housing Act ("FHA"), 42 U.S.C. §3601 *et seq.*; and for negligence.

2.   During Ms. Brown's residence in the emergency shelter system, the Defendants have discriminated against Ms. Brown on the basis of her disabilities.  The Defendants knowingly and willfully failed to provide Ms. Brown with reasonable accommodations or modifications in the units to which she has been assigned, and to provide Ms. Brown with equal access to shelter services.  Defendants' additional failures to provide basic fixtures, such as railings and bathroom grab bars, and to maintain shelter premises in a safe condition resulted in Ms. Brown falling repeatedly and suffering injuries.

3.   This case raises important issues concerning the administration of public shelter programs, including the extent to which contractors of public agencies can design and implement programs that have the purpose or effect of limiting the extent to which people with disabilities can safely receive needed housing and services in shelter programs.

## JURISDICTION AND VENUE

4.   Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 because the claims alleged herein arise under the laws of the United States.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims

because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.   Venue is proper in the this district pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful conduct that gives rise to these claims occurred within this district. The Court has jurisdiction over Plaintiff's action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## PARTIES

6.   Ms. Anita Brown is a resident of the District of Columbia. She is the mother of two minor sons, B.B. and T.B (hereinafter "minor sons"). She sues on her own behalf and, pursuant to Fed. R. Civ. P. 17(c), on their behalf as next friend. Ms. Brown and her minor sons became homeless in 2004.

7.   Since at least 2004, Ms. Brown has had a disability.[1] She suffers from numerous physical and mental conditions that impair her mobility and her ability to stand, walk, and use stairs, among other major life activities. She has used and continues to use a wheelchair.

8.   The Community Partnership for the Prevention of Homelessness ("the Partnership") is a non-profit corporation established in 1989 and headquartered in Washington, D.C. The Partnership, a government contractor, manages the District of Columbia's Continuum of Care on behalf of the city. On information and belief, the Partnership has a contract with the city government to direct, superintend, and manage homeless services providers in the District of Columbia. The Partnership is required to comply with the ADA, Section 504 of the Rehabilitation Act of 1973, and the FHA.

---

[1]    This complaint uses the terms "disability" and "disabled," except when referring to the FHA's statutory language, which uses "handicap" and "handicapped," *Giebeler v. M & B Assocs.,* 343 F.3d 1143, 1146 n. 2 (9th Cir.2003), legislative history, or in quoting previous court decisions.   These terms are intended to have identical meanings. *See id.*

3

9.  Through the work of subcontractors, the D.C. Continuum of Care includes prevention services, street outreach efforts, emergency shelter, transitional housing and permanent supportive housing for individuals and families. The Partnership is the sole entity that contracts with the city government to provide emergency shelter services to residents of the District of Columbia. The Partnership, in turn, subcontracts the management and oversight of homeless shelters. The Partnership is responsible for ensuring that its subcontractors comply with the ADA, Section 504 of the Rehabilitation Act of 1973, and the FHA.

10. The Partnership is the leaseholder of the New Beginnings Shelter located at 1448 Park Road, N.W.

11. Defendant Families Forward, Inc. is a non-profit corporation which provides shelter, transitional housing, and community support services for people who are homeless. Families Forward contracts with the Partnership to provide emergency shelter services to District of Columbia residents. Pursuant to a contract with the Partnership, Families Forward operates and is responsible for the day-to-day management of the New Beginnings Shelter.

## STATUTORY BACKGROUND

12. In 1988, Congress amended the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, by enacting the Fair Housing Amendments Act of 1988 ("the Amendments") to afford people with disabilities greater protection from housing discrimination. The law defines "handicap" broadly and prohibits housing discrimination against individuals with physical and/or mental disabilities. In passing the Amendments, Congress specifically prohibited "the use of stereotypes and prejudice to deny critically needed housing to handicapped persons." H.R. Rep. 100-711 at 18, *reprinted at* 1988 U.S. Code Cong. & Admin. News 2173, 2189.

4

13. The FHA's ban on disability discrimination reflects a "clear pronouncement of a national commitment to end the unnecessary exclusion of people with handicaps from the American mainstream." *Id.* In amending the FHA, Congress acknowledged the devastating impact that housing discrimination has on individuals with disabilities and recognized that prohibition of such discrimination is absolutely essential to their inclusion in American life. *See id.*

14. The FHA makes it illegal to discriminate on the basis of mental or physical disability in the sale or rental of housing or in the provision of services or facilities. It also places certain affirmative obligations on those involved in providing services related to housing. These obligations include requiring that reasonable accommodations be made in rules, policies, practices, and services when such accommodations are necessary to afford individuals with disabilities an equal opportunity to use and enjoy their homes.

15. Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* and the regulations adopted thereunder, prohibit discrimination against people with disabilities by public entities and their contractors, such as Defendants herein, and require public entities to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7).

16. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, and the regulations adopted thereunder, prohibit the discrimination of individuals on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.

17. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, ("Section 504") and the regulations adopted thereunder, apply to recipients of federal funds, such as Defendants herein. Like the FHA, they prohibit discrimination against people with disabilities, and require a recipient to modify its housing policies and practices to ensure that they do not discriminate on the basis of disability.

## FACTS

18. Ms. Brown became homeless after her disability forced her to leave her job as a correctional officer for the D.C. Department of Corrections. After she lived with a family member for a short time, Ms. Brown and her two minor sons entered the hypothermia shelter at D.C. General Hospital in December 2004. Subsequently, they were moved to the D.C. Village emergency shelter. From approximately September 7, 2005 to June 21, 2007, Ms. Brown and her minor sons lived at the New Beginnings Shelter ("New Beginnings") located at 1448 Park Road N.W., Washington D.C. 20010. From June 21, 2007 to March 27, 2008, Ms. Brown and her minor sons lived at the Community of Hope Shelter ("Community of Hope") located at 1413 Girard Street, N.W., Washington D.C. 20009.

19. The shelter units that Mrs. Brown and her minor sons have occupied at New Beginnings and Community of Hope, and that are the subject of this litigation, are "dwellings" within the meaning of the FHA, 42 U.S.C. § 3602(b); constitute a service, program or activity of a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131 *et seq.*; amount to a program or activity within the meaning of the Rehabilitation Act, 29 U.S.C. § 794; and involve a "transaction in real property" within the meaning of D.C. Code § 2-1401.02.

20. On information and belief, there are no fully wheelchair-accessible shelter units in the emergency family shelter system in the District of Columbia. Within the inventory of family shelter units that meet the legal requirement for apartment-style facilities, only two apartments, located at the Community of Hope shelter, can be accessed without walking up steps if the wheelchair lift is operational. Neither of these two units are fully wheelchair accessible.

21. When Ms. Brown was transferred to New Beginnings, she and her minor sons were placed in Unit 405, a unit on the fourth floor. They lived in that unit from approximately September 7, 2005 to July 5, 2006. The unit was not equipped with a telephone.

22. New Beginnings has four floors and a basement. During the time period relevant here, the first floor could not be reached without climbing up steps. Each of the upper floors was accessible only through a narrow stairway. None of the units was wheelchair-accessible.

23. When Ms. Brown and her minor sons resided there, Unit 405 had broken bathroom tiles, holes in the hallway and living room floors, broken lights, a refrigerator and freezer in disrepair, and bedbug-infested mattresses. Ms. Brown could not use her wheelchair in this unit because the hallways and doorways were too narrow and the kitchen and bathroom were not accessible. She also had difficulty safely using the bathroom and shower because there were no grab bars.

24. In order to reach the fourth floor, Ms. Brown had to climb a small flight of stairs from the front entryway and then four steep flights of stairs. Because of her disabilities, it was very difficult and painful for her to go up and down the stairs. Ms. Brown had to lean against the railings to go up and down the stairs but, because the railings were partially or

7

completely detached from the wall at points along the stairway, the railings did not adequately support Ms. Brown. It often took Ms. Brown approximately forty-five minutes to an hour to go up or down the stairs.

25. While Ms. Brown was living in Unit 405, she fell several times on the stairs and in the shower. Ms. Brown generally left her apartment only to attend doctor's appointments and for other urgent needs. The shelter required that children be supervised by parents at all times and Ms. Brown was warned in writing on one occasion when it was believed that she did not comply with this rule. When Ms. Brown's children were out of school, they were often not allowed to leave the shelter unit for several days at a time because Ms. Brown was unable to leave it.

26. During fire drills, Ms. Brown told her minor sons to exit without her because she knew that she was unable to evacuate the building quickly. Each time, her sons worried that she might be trapped inside the building because she could not exit in time.

27. During their residency at New Beginnings, Ms. Brown's minor sons experienced difficulties at school.

28. When Ms. Brown's minor sons were away one weekend with a family member, Ms. Brown experienced debilitating pain. Ms. Brown ran out of pain medicine. Without a phone, she was unable to call for help and was bedridden for two days until her sons returned.

29. Because of the increased pain and isolation Ms. Brown experienced as a result of living on the fourth floor, her depression and anxiety worsened and she was often unable to sleep during the night.

30. Ms. Brown missed many of her case management meetings because they were held on the first floor. Because the notifications of meetings were posted on the first floor, Ms. Brown was sometimes not aware that she had a scheduled meeting. Ms. Brown often went for months without meeting with her case manager.

31. On the night that Ms. Brown moved into New Beginnings, she spoke with the site manager, Sandra Vanderhurst, about her need to be in an accessible unit. The next day, Ms. Brown gave Mr. Johnson, a staff member of Families Forward a note from her doctor. The note stated that, because of her disability, she should not climb stairs. The staff member took her doctor's note and promised to give a copy to the site manager and to put a copy in Ms. Brown's file.

32. Ms. Brown spoke to the site manager and other staff members on a number of occasions about obtaining a first-floor unit. On several occasions, the site manager explained that they could not move Ms. Brown because no one wanted to live on the fourth floor and that, if they moved her to a first floor unit, they would have to move everyone to the first floor.

33. The New Beginnings building has an elevator and Ms. Brown observed maintenance and other staff members using the elevator. Ms. Brown asked the site manager if she could use the elevator to reach her fourth floor unit but the site manager told her that no residents were permitted to use it.

34. On December 2, 2005, Ms. Brown observed a second-floor resident moving out of New Beginnings. Ms. Brown requested that she be placed in the vacant unit while she waited for a first-floor unit to become available. A Families Forward staff member told Ms. Brown that the unit was too small for her family. Ms. Brown was never offered the unit.

35. On April 4, 2006, Families Forward received a monitoring report from the District of Columbia government, which stated that New Beginnings "is not handicapped accessible" and that "access to services free from discrimination on the basis of disability are not available at [New Beginnings], primarily because access is not available to physically handicapped clients who cannot manage to climb stairs." The Partnership also received a copy of the report.

36. On April 18, 2006, Ms. Brown submitted another letter from her doctor to Families Forward. The letter requested that Ms. Brown be moved to a lower floor unit because Ms. Brown's use of the stairs on a daily basis exacerbated the pain caused by her disabilities.

37. On April 19, 2006, the Families Forward site manager wrote Ms. Brown a letter stating that she was willing to move Ms. Brown to a lower floor unit. A unit was never identified in the letter and Ms. Brown was not shown a unit.

38. On June 15, 2006, Ms. Brown, through her legal representative, wrote the Families Forward site manager to again request reasonable accommodations. Ms. Brown requested to be moved to an accessible first-floor apartment, to have her permanent housing subsidy application expedited so that she could obtain housing that met her needs, to receive access to the elevator, and to receive, as an interim measure, an electronic communication device to communicate with Families Forward staff in the event of an emergency.

39. On June 15, 2006, the Families Forward site manager sent Ms. Brown a letter acknowledging that it was unsafe for Ms. Brown to remain in her fourth-floor unit because of her inability to timely evacuate the building in the event of an emergency. Further, the site manager identified a first-floor unit that would be available for Ms. Brown on June 19, 2006.

10

The site manager did not respond to the other requests that were made in the June 15, 2006 letter.

40. On June 19, 2006, Ms. Brown viewed Unit 108 with her legal representative and a staff member from New Beginnings. Before she was able to convey her interest in the unit later in the day, she was notified that the unit had been given to another family.

41. On June 22 and 29, 2006, Ms. Brown's counsel contacted representatives from the Partnership regarding Ms. Brown's continuing need for a lower-level unit that would accommodate her disability and minor sons.

42. Subsequently, Families Forward identified Unit 106 as available and said Ms. Brown and her sons could move in on June 26, 2006.

43. In the week of June 26, 2006, a flood occurred in the basement of New Beginnings. Families Forward staff moved a family displaced by the flood out of the basement and into Unit 106. On information and belief, the family moved to Unit 106 did not have members with any mobility impairments.

44. On July 5, 2006, Ms. Brown and her minor sons moved into Unit 103, a first-floor unit at New Beginnings.

45. To reach the first floor of New Beginnings and Unit 103, Ms. Brown was required to climb a number of steps. Ms. Brown was unable to use her wheelchair to enter or exit the building. She could not use her wheelchair in Unit 103 because the unit was not wheelchair accessible. In addition, the bathroom had an inaccessible bathtub with no grab bars or other necessary modifications. The floor throughout the unit was uneven and had indentations in it.

46. On July 5, 2006, the first night that Ms. Brown lived in Unit 103, she fell after stepping in a hole in her bedroom floor. Thereafter, she fell several times in the living areas and the bathroom. For example, on or about June 11, 2007, Ms. Brown fell as she was getting out of the bathtub/shower. She leaned toward the sink for support, lost her balance, and fell, injuring her left hip, left shoulder, and right leg. Shortly thereafter, she fell as she rose from a bed in the living room of Unit 103. The floor under the carpeting had disintegrated and gave way beneath Ms. Brown's foot as she stood up.

47. On June 21, 2007, Ms. Brown moved with her minor sons to the Community of Hope Shelter, Unit 105, where the family resided until March 27, 2008.

48. Ms. Brown encountered difficulty carrying out daily activities while living in Unit 105 due to its failure to comply with accessibility requirements. For instance, the bathroom contained several deficiencies, including but not limited to: inadequate turn radius, inaccessible bathtub/shower, and inaccessible sink.

49. In the Summer of 2007, Ms. Brown fell while getting out of the bathtub/shower in Unit 105 at the Community of Hope Shelter, injuring her right leg, back, right hip, and right arm. Ms. Brown's injuries were caused by the inaccessibility of the bathroom.

50. Due to the closure of D.C. Village family shelter, the Partnership was contracted to place over 100 families in a new subsidized transitional housing program called the "Scattered Site Transitional Program" ("SSTP"). Families in the shelter system were placed in order by length of time in shelter. SSTP is a city-funded program that provides rental subsidies in private apartments and case management services to homeless families until they can obtain permanent affordable housing. The Partnership contracted with seven Family Support Collaboratives to provide case management to families in SSTP. The Partnership

12

was partially responsible (along with the District of Columbia government) for locating and securing private rental units to meet the needs of the STTP participants.

51. On August 29, 2007, Ms. Brown received a "Notice of Transfer" that stated that Ms. Brown would be placed in STTP by September 14, 2007 because "[t]he provider has found and secured a placement with another program that better meets your needs..." She was assigned a caseworker, Ms. Harris, from the North Capitol Family Support Collaborative to help her locate and lease an appropriate unit. On or about September 5, 2007, Ms. Brown was taken to see one apartment available for rental by STTP participants. The apartment did not comply with accessibility requirements. Ms. Harris told Ms. Brown that she did not realize that Ms. Brown needed an accessible unit.

52. Ms. Brown was never shown any additional STTP apartments. On or about September 17, 2007, Ms. Harris left a message for Ms. Brown stating that she had been instructed by the Partnership no longer to assist Ms. Brown.

53. Defendants were at all relevant times aware or should have been aware of Ms. Brown's disabilities and the conditions of the premises in which she and her minor sons resided. Ms. Brown relied upon the Defendants to provide her and her minor sons premises and services free of discrimination on the basis of disability and safe, clean and sanitary shelter premises.

54. Defendants have knowingly, willfully, and recklessly denied Ms. Brown the benefits of and rights to full access to emergency shelter services because she has a disability, have failed to maintain and/or modify the New Beginnings and Community of Hope shelters in a manner that allows mobility-impaired persons equal access to the buildings and living units, and have failed to meet or delayed responding to Ms. Brown's numerous requests for

13

reasonable accommodations, and have failed to provide her and her sons safe, clean, and sanitary facilities.

55. On information and belief, during some or all of the relevant time, the Defendants did not have a written policy or procedure to govern the assessment of reasonable accommodation requests. On information and belief, during some or all of the relevant time, Defendants also failed to appoint and/or publicize the identity of ADA Compliance Officers or develop grievance procedures for the resolution of disability rights complaints in the emergency shelter system

56. Defendants negligently supervised and failed to monitor the compliance of subcontractors, and employees with federal and local disability rights law and the Homeless Services Reform Act, D.C. Code § 4-751 *et seq*.

57. Defendants operate services, programs or benefits on behalf of a public entity, and therefore have statutory duties and obligations under the ADA. Defendants further own, lease or operate places of public accommodation and therefore have statutory duties and obligations under the ADA.

58. Defendants are recipients of federal funds, and therefore have statutory duties and obligations under the Rehabilitation Act.

59. Defendants have violated their affirmative obligations under the ADA and Rehabilitation Act to ensure that public services are offered and public accommodations are provided in a manner that do not discriminate against people with disabilities.

60. For several years, the Defendants have been made aware, through legislative testimony, letters, and oral communication that the shelter system fails to comply with federal and local laws which guarantee disabled individuals equal access to shelter services.

Nonetheless, during all or part of the time period relevant here, the Defendants have failed to implement policies and procedures necessary to ensure compliance with these laws.

61. In acting or in failing to act as alleged in this Complaint, each employee or officer of both Defendants was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by one of the Defendants as principal.

## CLAIMS

### FIRST CLAIM
### Violation of the Fair Housing Act (42 U.S.C. § 3601 *et seq.*)

62. Ms. Brown re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 61 above.

63. Ms. Brown has a disability within the meaning of the Fair Housing Act ("FHA"), 42 U.S.C. § 3602(h) because, as alleged herein, she has impairments which substantially limit one or more major life activities.

64. Emergency shelter units are "dwellings" as defined in 42 U.S.C. § 3602(b).

65. Defendants are subject to the provisions of the FHA.

66. Defendants injured Ms. Brown and her minor sons in violation of the FHA by:

    a. Discriminating against them in rental of, or otherwise making unavailable or denying, a dwelling because of a disability in violation of 42 U.S.C. § 3604(f)(1);

    b. Discriminating against them in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2);

    c.  Refusing to make reasonable accommodations in rules, policies,

practices, or services, when such accommodations were necessary to afford

disabled persons equal opportunity to use and enjoy a dwelling, in violation of

42 U.S.C. § 3604(f)(3)(B);

67. Defendants' conduct proximately caused damages to Ms. Brown and her sons,

who suffered discrimination, physical injuries and emotional distress.

**SECOND CLAIM**
**Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)**

68. Ms. Brown re-alleges and incorporates herein by reference each and every

allegation contained in Paragraphs 1 through 61 above.

69. Defendants receive federal financial assistance in connection with their

management of the emergency shelter system and other programs and services.

70. Defendants' operations constitute a "program or activity" within the meaning of

29 U.S.C. § 794(b).

71. Ms. Brown is a qualified individual with a disability as defined by 29 U.S.C. §

705(20).

72. Section 504 of the Rehabilitation Act prohibits recipients of federal funding from

denying to qualified persons with disabilities the benefits provided by the recipient, or from

subjecting persons with disabilities to discrimination. 29 U.S.C. § 794.

73. Defendants have violated Section 504 of the Rehabilitation Act, 29 U.S.C. § 794,

by:

    a.  Denying Ms. Brown the opportunity to benefit from the emergency shelter

programs or activities, including the STTP program, because of her disabilities;

16

b.  Discriminating against Ms. Brown because of her disability, including refusing to grant Ms. Brown's requests for reasonable accommodations or modifications;

c.  Using criteria or methods of administration of their programs, which effectively discriminates because of disability and which defeat or substantially impair the objectives of the program for qualified individuals with a particular disability;

d.  Adopting and enforcing policies which fail to ensure that Ms. Brown has access and enjoyment of emergency shelter services in a manner equal to those without disabilities;

e.  Failing to develop or maintain a sufficient number of units that are accessible to persons using wheelchairs or who have mobility impairments in order to provide equal access to emergency shelter services for persons with disabilities; and

f.  Failing to provide Ms. Brown a fully accessible unit compliant with ADA regulations and sufficient to provide her equal access to emergency shelter.

74. Defendants' conduct proximately caused damages to Ms. Brown and her sons, who suffered discrimination, physical injuries and emotional distress.

## THIRD CLAIM
### Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)

75. Ms. Brown re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 61 above.

76. Title II of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132, *et seq.*

17

77. Ms. Brown is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2).

78. Defendants are public entities within the meaning of 42 U.S.C. § 12131(1) because they are instrumentalities of the District of Columbia.

79. Defendants have violated Title II of the ADA by:

a.  Denying Ms. Brown the benefits of their services, programs, and activities and subjecting her to discrimination;

b.  Refusing to make reasonable modifications in their policies, practices, or procedures necessary to afford Ms. Brown and other individuals with disabilities access to the services and privileges offered by Defendants, in violation of 28 C.F.R § 35.130(b)(7);

c.  Using criteria or methods of administration of their services, programs, or activities, the effect of which discriminates against Ms. Brown because of disability;

d.  Adopting and enforcing or refusing to adopt and enforce policies and practices designed and intended to ensure that Ms. Brown has access and enjoyment of emergency shelter services in a manner equal to those without disabilities;

e.  Failing to develop or maintain a sufficient number of units that are accessible to persons using wheelchairs or who have mobility impairments in order to provide equal access to emergency shelter services for persons with disabilities; and

f.  Failing to provide Ms. Brown a fully accessible unit compliant with ADA regulations and sufficient to provide her equal access to emergency shelter.

18

80. Defendants' conduct proximately caused damages to Ms. Brown and her sons, who suffered discrimination, physical injuries and emotional distress.

### FOURTH CLAIM
### Americans with Disabilities Act (42 U.S.C. § 12181 *et seq.*)

81. Ms. Brown re-alleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 61 above.

82. Title III of the ADA provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.  42 U.S.C. § 12182(a), *et seq.*

83. Ms. Brown is an individual with a disability within the meaning of 42 U.S.C. § 12182 and was a client or customer of a covered public accommodation.

84. New Beginnings and Community of Hope are "public accommodations" within the meaning of  42 U.S.C. § 12181(7).

85. Defendants own, lease or operate "public accommodations."

86. Defendants have violated Title III of the ADA by:

a.   Denying Ms. Brown the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation;

b.   Affording Ms. Brown with an opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals;

c.  Providing Ms. Brown with a good, service, facility, privilege, advantage, or
accommodation that is different or separate from that provided to other
individuals;

d.  Denying Ms. Brown an opportunity to participate in programs and activities that
are not separate or different;Utilizing standards or criteria or methods of
administration that have the effect of discriminating on the basis of disability or
that perpetuate the discrimination of others who are subject to common
administrative control;

e.  Failing to make reasonable modifications in policies, practices, or procedures,
when such modifications are necessary to afford such goods, services, facilities,
privileges, advantages, or accommodations to individuals with disabilities;

f.  Failing to take such steps as may be necessary to ensure that no individual with a
disability is excluded, denied services, segregated or otherwise treated differently
than other individuals because of the absence of auxiliary aids and services;

g.  Failure to remove architectural barriers that are structural in nature, in existing
facilities, where such removal is readily achievable.

87. Defendants' conduct proximately caused damages to Ms. Brown and her sons,
who suffered discrimination, physical injuries and emotional distress.

**FIFTH CLAIM**
**Negligence and Negligence Per Se**

88. Ms. Brown re-alleges and incorporates by reference each and every allegation
contained in Paragraphs 1 through 61 above.

89. Defendants negligently failed to place Ms. Brown in accessible shelter units, to
maintain the buildings adequately for her safety as a resident, and to provide her services and

shelter free from discrimination on the basis of disability. Specifically, Defendants were negligent *per se* in failing to meet their obligations under the Homeless Services Reform Act, D.C. Code § 4-754.

90. Defendants' conduct proximately caused damages to Ms. Brown and her sons, who suffered physical injuries and emotional distress.

### SIXTH CLAIM
### Negligence: Vicarious Liability

91. Ms. Brown re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 61 above.

92. Defendants are vicariously liable for the acts and omissions of their agents in providing reasonable care for Ms. Brown.

93. Defendants' conduct proximately caused damages to Ms. Brown and her sons, who suffered physical injuries and emotional distress.

### SEVENTH CLAIM
### Negligent Supervision

94. Ms. Brown re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 61 above.

95. Defendants negligently failed to monitor and supervise the actions of contractors, employees, and agents responsible for ensuring that Ms. Brown and her minor sons resided in appropriate and fully accessible shelters, in safe, clean and sanitary shelter conditions and in shelter free of discrimination based on Ms. Brown's disability.

96. Defendants' conduct proximately caused damages to Ms. Brown and her sons, who suffered physical injuries and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Brown respectfully requests that the Court enter an order:

1.     Declaring that the Defendants have violated:

      a.     The Americans with Disabilities Act (42 U.S.C. § 12131 *et seq.*)

      b.     Section 504 of the Rehabilitation Act (42 U.S.C. § 794)

      c.     The Fair Housing Act (42 U.S.C. § 3601 *et seq.*)

2.     Declaring that the Defendants have acted negligently or have failed to act;

3.     Awarding monetary damages to Ms. Brown and her minor sons in an amount to be determined at trial;

4.     Awarding punitive damages;

5.     Awarding reasonable costs and attorneys fees;

6.     Awarding any other relief that the court finds just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Brown hereby requests a trial by jury as to each and every claim for which she is so entitled.

Respectfully submitted,

Patricia Mullahy Fugere
DC Bar No. 384796
Amber W. Harding
DC Bar No. 484130
Washington Legal Clinic for
the Homeless
1200 U Street, N.W.
Washington, D.C. 20008
(202) 328-5500
(202) 328-5515 (fax)

Jeffrey S. Gutman
D.C. Bar No. 416954
The George Washington
University Law School
2000 G Street, N.W.
Washington, D.C. 20052
(202) 994-7463
(202) 994-4693 (fax)

Counsel for Plaintiff

Dated:  June 27, 2008

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

*08-1166*
*ESH*

| **I (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| ANITA BROWN | THE COMMUNITY PARTNERSHIP FOR THE PREVENTION OF HOMELESS, ET AL |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __11001__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:08-cv-01166
Assigned To : Huvelle, Ellen S.
Assign. Date : 7/3/2008
Description: Civil Rights-Non-Employ.

*JURY ACTION*

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government Plaintiff
■ 3 Federal Question (U.S. Government Not a Party)
□ 2 U.S. Government Defendant
□ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENS...**
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**□ A. Antitrust**

□ 410 Antitrust

**□ B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

**□ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**□ E. General Civil (Other) OR □ F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Immigration**
□ 462 Naturalization Application
□ 463 Habeas Corpus- Alien Detainee
□ 465 Other Immigration Actions

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant)

□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.

□ 460 Deportation
□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

| □ G. *Habeas Corpus/ 2255* | □ H. *Employment Discrimination* | □ I. *FOIA/PRIVACY ACT* | □ J. *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ K. *Labor/ERISA (non-employment)* | ■ L. *Other Civil Rights (non-employment)* | □ M. *Contract* | □ N. *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>Ⓧ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

V. ORIGIN
■ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify)   □ Multi district Litigation   □ 7 Appeal to District Judge from Mag. Judge

VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC 12131   Americans with Disabilities

VII. REQUESTED IN COMPLAINT   CHECK IF THIS IS A CLASS   □ ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: Ⓧ YES   □ NO

VIII. RELATED CASE(S) IF ANY   (See instruction)   □ YES   □ NO   If yes, please complete related case form.

DATE   7.3.08   SIGNATURE OF ATTORNEY OF RECORD   NCD

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

\forms\js-44.wpd